IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-00325-RJC-DCK

| ANTHONY A. SHARP; TALISHA M. ROGERS, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **ORDER** |
| M. MILLER, Presbyterian Hosp. (Doctor); JOHN DOE, Presbyterian Hosp. (Chief of Administration.); JOHN DOE, Golden Living Ctr. (Administrator) | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the Court on a review of Plaintiffs' *pro se* complaint and the motions to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e).

I.   BACKGROUND

According to the allegations in the complaint, which are taken as true for purposes of this initial review, Dr. Miller is a surgeon employed at Presbyterian Hospital who began treating Plaintiffs' mother, Terri Lee Sharp, in December 2012, and he performed a "high risk surgery" on her that month which required that he place stents in her legs to open up her arteries. During one procedure, Ms. Sharp went into cardiac arrest but she was stabilized and released a few days later. After she returned home, Plaintiff Talisha Rogers noticed that Ms. Sharp's right foot had turned black and Ms. Sharp complained that she had no feeling in her foot or her leg. Ms. Sharp informed Dr. Miller of this development and he examined her and concluded that the stent had failed and he would have to perform another surgery. Ms. Sharp was readmitted to Presbyterian and underwent

1

the surgery and while recovering she developed a bacterial infection and Dr. Miller became concerned that he may have to amputate her leg. Ms. Sharp expressed to Plaintiff Anthony Sharp that she was in a lot of pain and struggling to breathe. Prior to the surgery to remove her leg, Ms. Sharp was transferred from Presbyterian to Golden Living Center on February 27, 2013, for rehabilitation. Plaintiffs contend that Golden Living Center was ill-equipped to address Ms. Sharp's health issues which included her labored breathing and heart problems. On March 4, 2013, Plaintiff Sharp called Plaintiff Rogers and she informed him that their mother had passed away early that morning.

Plaintiffs allege that the defendants are liable for their actions – apparently through medical malpractice and/or negligence or wrongful death – in treating and caring for their mother which caused or contributed to her death in March 2013. Plaintiffs also allege that one or more of the defendants failed to comply with the Emergency Medical Treatment and Active Labor Act ("EMTALA") when she was transferred while still in precarious health from Presbyterian Hospital to Golden Living Center. Lastly, Plaintiffs purport to bring an Eighth Amendment claim for cruel and unusual punishment under 42 U.S.C. § 1983.[1]

## II. STANDARD OF REVIEW

In addition to reviewing Plaintiff's motion to proceed *in forma pauperis*, the Court must examine the complaint to determine whether this Court has jurisdiction and to ensure that the action is not (1) frivolous or malicious; or (2) that the complaint fails to state a claim upon which relief may be granted; or (3) that Plaintiff is seeking monetary damages from a defendant who is

---

[1] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49(1988) (internal citations omitted). It is beyond dispute that none of the defendants qualify as state actors therefore any claim for a violation of civil rights under § 1983 must fail.

2

immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i),(ii), and (iii); see also Michau v. Charleston County, S.C., 434 F.3d 725, 728 (4th Cir. 2006) (noting that § 1915(e) "governs IFP filings in addition to complaints filed by prisoners . . .").

In conducting this review, the Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989). While a pro se complaint must be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), this requirement of liberal construction will not permit a district court to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

III. DISCUSSION

　　A.　EMTALA

Congress passed the EMTALA to "assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such a condition exists." Del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 19 (1st Cir. 2002).[2] See 42 U.S.C. § 1395dd. In order to state a prima facie claim for relief, the Plaintiffs' must show that Ms. Sharpe had an (1) "emergency medical condition" when she was admitted to the hospital; (2) that the hospital knew of the emergency condition; and (3) that the hospital failed to stabilize Ms. Sharpe before she was discharged to Golden Living Center. See Pettyjohn v. Mission St. Joseph's

---

[2] The Court would assume for purposes of this review only, that defendant Presbyterian Hospital is a covered hospital. It would not appear, however, that Golden Living Center would qualify based on the allegations in the complaint which all seem to define this as a long-term care center. According to the complaint, this facility had almost no emergency resources whatever to care for Ms. Sharpe therefore it does not appear that it would qualify as facility with an emergency room.

3

Health Sys., 21 F. App'x 193, 195-96 (4th Cir. 2001) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 883 (4th Cir. 1992)). See 42 U.S.C. § 1395dd(e)(1)(A) (emergency medical condition defined as "a medical condition manifesting itself by acute systems of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in – (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part . . .").

The EMTALA provides that no civil action for personal injury under § 1395dd(d)(2)(A) "may be brought under this paragraph more than two years after the date of the violation to which the action is brought." § 1395dd(d)(2)(C). According to Plaintiffs' complaint, Ms. Sharpe died in the early morning hours of March 4, 2013, however the complaint was not filed with the Clerk until until July 23, 2015. (3:15-cv-00325, Doc. No. 1: Compl. 7-8). Even assuming a delay in processing the complaint, the Court notes that the complaint is dated July 8, 2015, id. at 15, and the envelope bears a date of July 18, 2015. (Id., Doc. No. 1-1 at 2). Based on the foregoing, the Court finds that a civil claim for relief under the EMTALA is barred by the two-year statute of limitations and this federal claim will therefore be dismissed.

B.  Medical malpractice

Plaintiffs' complaint appears to present a claim that Dr. Miller committed medical malpractice either in his treatment of Ms. Sharp while she was his patient at Presbyterian or when he transferred her to Golden Living Center prior to her surgery. Plaintiffs' complaint also appears to present a claim of medical malpractice against Defendants Presbyterian and Golden Living Center.

Under North Carolina law, medical malpractice is defined as either of following:

4

a. A civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.

b. A civil action against a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes for damages for personal injury or death, when the civil action (i) alleges a breach of administrative or corporate duties to the patient, including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.

N.C. Gen. Stat. 90-21.11(2)(2011).

In order to bring a complaint for medical malpractice, a plaintiff must first comply with Rule 9(j) of the North Carolina Rules of Civil Practice which provides,

(j) Medical malpractice. - Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. 1A-1, Rule 9(j).

As the Fourth Circuit observed, the "district courts in this circuit are also unanimous that a Rule(j) certification is required to sustain a medical malpractice action [ . . .] in North Carolina."

See Littlepaige v. United States, 528 F. App'x 289, 292 (4th Cir. 2013) (unpublished). It is clear that the certification requirement under Rule 9(j) applies here. Littlepaige, 528 F. App'x at 293 (concluding "that, where applicable, a Rule(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action."). See also Wilson v. Dr. Argila, No. 5:14-CV-383-FL, 2015 U.S. Dist. LEXIS 140487, at *11-12 (E.D.N.C. Oct. 15, 2015) (collecting cases).

Because no such certification has been submitted in this action, any claim for relief based on medical malpractice must be dismissed.

C.  Negligence or Wrongful death

Federal district courts are courts of limited jurisdiction and may only exercise jurisdiction when authorized by federal statute or the United States Constitution. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005); United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). District courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (internal citation omitted).

As the Court has already found, Plaintiffs have failed to state a claim for relief under the EMTALA because the claim is filed outside of the statute of limitations. Accordingly, because only state law claims for medical malpractice, negligence or wrongful death remain, this case may only proceed if Plaintiffs can meet the requirements for this Court to exercise diversity jurisdiction.

Plaintiff Anthony Sharp states that he resides in Coalinga, California, and Plaintiff Talisha Rogers states that she resides in Charlotte, North Carolina. According to the complaint, each of the defendants appear to be residents and citizens of Charlotte, North Carolina. Diversity jurisdiction

exists only when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction requires "that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

Based on a review of allegations in Plaintiffs' complaint, the Court finds there is not complete diversity as Plaintiff Talisha Rogers is a citizen and resident of Charlotte, North Carolina, as are the three named defendants. Accordingly, Plaintiffs' complaint will be dismissed.[3]

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff Sharp's motion for an order of injunction is **DENIED**. (Doc. No. 2).
2. Plaintiffs' motions to proceed *in forma pauperis* are **GRANTED**. (Doc. Nos. 3, 6).
3. Plaintiffs' complaint is **DISMISSED without prejudice**. (Doc. No. 1).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: December 7, 2015

Robert J. Conrad, Jr.
United States District Judge

---

[3] The Court notes that this diversity requirement would not have been met with the present alignment of the parties even if a Rule 9(j) certification had been filed with the complaint.